**Not for Publication**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| HOWARD SMITH, | |
| *Plaintiff*, | Civil Action No. 17-1730 |
| v. | **AMENDED OPINION** |
| DANIEL ROONEY, *et al*, | |
| *Defendants*. | |

**John Michael Vazquez, U.S.D.J.**

This case arises from the Wayne Board of Education's termination of Plaintiff as a physical education and health teacher for the Wayne School District. Plaintiff primarily alleges that his termination was the result of a religious discrimination and retaliation conspiracy. The present matter comes before the Court on Defendants Daniel Rooney, Daniel Rooney on behalf of his minor son D.R., the Wayne Board of Education, Mark Toback, and Jack Leonard's (collectively "Defendants") motion to dismiss Plaintiff Howard Smith's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. D.E. 14. Plaintiff submitted a brief in opposition, D.E. 19, to which Defendants replied. D.E. 20.[1] The Court reviewed the submissions in support and in opposition, and considered the motion without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons stated below, Defendants' motion is **GRANTED in part** and **DENIED in part**.

---

[1] In this Opinion, Defendants' motion to dismiss (D.E. 14) will be referred to as "Def. Brf." Plaintiff's brief in opposition (D.E. 19) will be referred to as "Pl. Opp." Defendants' reply brief (D.E. 20) will be referred to as "Def. Rep."

# I.    BACKGROUND

## A.    Factual Background

Plaintiff Howard Smith was a tenured physical education and health teacher for the Wayne School District. Amended Complaint ("Am. Compl.") ¶¶ 34-35; D.E. 11. Plaintiff worked for the district from 1997 until September 8, 2016, when Defendant Wayne Board of Education ("Wayne BOE") terminated his employment. *Id.* ¶¶ 33, 115. Defendant Mark Toback is the Superintendent for the Wayne School District. *Id.* ¶ 25. Defendant Jack Leonard is the principal of a Wayne middle school. *Id.* ¶ 26. Defendant Daniel Rooney is the guardian of his minor son Defendant D.R., one of Plaintiff's former students at a Wayne middle school. *Id.* ¶¶ 9-10, 12, 40.

This matter arises from an incident in Plaintiff's physical education class involving Plaintiff and D.R. On January 27, 2016, Plaintiff informed the principal, Leonard, that during class that day, D.R. had referred to Plaintiff and a Jewish classmate with the threat of "killing two Jews with one stone."[2] *Id.* ¶¶ 43-44. Plaintiff is Jewish. Leonard spoke with D.R., who admitted both to making the comment and that he was aware Plaintiff was Jewish. *Id.* ¶¶ 56-57. As a result, Leonard concluded that D.R.'s statement was religious discrimination and immediately suspended D.R. for two days. *Id.* ¶¶ 60-61.

---

[2] At this stage, the Court accepts the factual allegation in the Amended Complaint as true. Defendants indicate that on the day of the incident, D.R. threw a paper object that landed near Plaintiff and the Jewish student. At that point, D.R. made a statement to the effect that he had almost killed two Jews with one stone. Yet, the Court points out this distinction because it undercuts Plaintiff's claim, if true. Plaintiff's Amended Complaint indicates that D.R. threatened to kill Plaintiff and the Jewish student, as though it were indicative of some future action that D.R. planned to take. However, if Defendants' version is accurate, D.R.'s inappropriate comment came *after* the activity (the throwing of the object) and was not reflective of D.R.'s intent to take future action.

Leonard then informed Rooney, D.R.'s father, of the suspension and the reasons therefor. *Id.* ¶ 69. Later that same day, January 27, 2016, Rooney called Leonard and accused Plaintiff of having previously engaged in appropriate behavior in the classroom. *Id.* ¶ 70. Prior to Rooney's allegations, no other student from the physical education class Plaintiff taught D.R. in had complained of Plaintiff's behavior. *Id.* ¶ 91. Following Rooney's allegations, the Wayne BOE conducted an investigation into the allegations and then suspended Plaintiff and filed tenure charges against him. *Id.* ¶ 93. In the Statement of Tenure Charges, Superintendent Toback referred to Rooney's allegations but did not mention D.R.'s "religious threat" against Plaintiff. *Id.* ¶ 105.

Several students testified at Plaintiff's tenure hearing. *Id.* ¶ 94. The students admitted that they knew prior to being interviewed, during the investigation stage, that they were to be interviewed about matters concerning Plaintiff. *Id.* At the hearing, Leonard acknowledged that it was problematic that the students knew ahead of time that the purpose of the hearing was to investigate Plaintiff's behavior.[3] *Id.* ¶ 97. Leonard further admitted that during his investigation of Rooney's allegations, a student admitted that he (the student) and his classmates made derogatory comments about Muslims and Italians "all the time." *Id.* ¶ 100. Leonard said that he did not further investigate or take action after hearing this comment. *Id.* He also said that it would not have been in his "best interest" to interview Plaintiff's former students to determine

---

[3] The Amended Complaint does not indicate what precisely the students were told before they were interviewed during the investigation. For example, the Amended Complaint does not state whether the students were merely told that they were to be interviewed about matters concerning Plaintiff or if the students were provided information beforehand in an attempt to sway their statements.

whether they had similar allegations against Plaintiff. *Id.* at 101. Following the tenure hearing,

the Wayne BOE, on September, 8, 2016, terminated Plaintiff's employment.[4] *Id.*

In addition to objecting to his termination, Plaintiff alleges that Defendants

inappropriately disclosed confidential information on multiple occasions. Plaintiff states that he

and the Wayne BOE entered into an agreement in May 2015, which included a confidentiality

provision limiting disclosure. *Id.* ¶ 109. Plaintiff states that Toback first violated that agreement

when he disclosed confidential information to the arbitrator presiding over the tenure charges.

*Id.* ¶ 111. Plaintiff alleges that the Wayne BOE then disclosed confidential information to the

Department of Labor. This disclosure resulted in Plaintiff experiencing a delay in receiving

unemployment benefits. *Id.* ¶ 117.[5] Plaintiff states that on March 29, 2017, the Wayne BOE

further disclosed confidential information to the Equal Employment Opportunity Commission

("EEOC"). *Id.* ¶ 121. Plaintiff adds that the Wayne BOE disclosed confidential information on

---

[4] Thus, Plaintiff's substantive factual allegations boil down to the following. D.R., who was a student in Plaintiff's class, made a remark that can reasonably be interpreted as anti-Semitic. Thereafter, the principal, Leonard, took immediate action: Leonard interviewed D.R., who admitted that he had made the remark, and then Leonard suspended D.R. Rooney then called Leonard and indicated that Plaintiff himself had engaged in inappropriate conduct, which (as is discussed below) Leonard was duty-bound by statute to investigate. Although students were told beforehand that they were to be interviewed about matters concerning Plaintiff, Plaintiff fails to allege that the students were subject to any improper influence before being interviewed. Following the school's investigation, Plaintiff was suspended and brought up on tenure charges. The tenure proceeding was before an independent arbitrator, who took testimony and evidence over several days. There is absolutely no allegation in the Amended Complaint that any person engaged in anti-Semitic conduct or made anti-Semitic remarks either during the investigation or during the tenure hearing.

[5] On January 13, 2017, the Department of Labor's Appeal Tribunal issued a decision finding that Plaintiff's testimony was "specific and consistent on the important facts" and that the Wayne BOE had not met its burden of showing that Plaintiff had engaged in misconduct. Am. Compl. ¶ 119.

4

May 22, 2017, to the Court and general public, when it filed its first motion to dismiss Plaintiff's Complaint. *Id.* ¶ 122.

### B. Procedural Background

On March 15, 2017, Plaintiff filed a Complaint against Defendants. D.E. 1. In response, Defendants filed a motion to dismiss. D.E. 7. Plaintiff then filed an Amended Complaint on June 2, 2017. D.E. 11. In his Amended Complaint, Plaintiff brings *forty-five* counts against Defendants: 42 U.S.C. § 1983 violations of his Fourteenth Amendment rights based on religion (Counts One through Five); 42 U.S.C. § 1985 conspiracy violations to interfere with his civil rights (Counts Six and Seven); 42 U.S.C. § 1986 violation for neglecting to prevent the civil rights conspiracy (Counts Eight through Eleven); New Jersey Law Against Discrimination violations (Counts Twelve through Nineteen and Counts Twenty-Six through Thirty-Three); breach of contract (Counts Twenty, Twenty-Two, Thirty-Five, and Thirty-Seven); breach of duty of good faith and fair dealing (Counts Twenty-One, Twenty-Three, Thirty-Six, and Thirty-Eight); tortious interference (Counts Twenty-Four and Twenty-Five); property damage (Count Thirty-Four); and 42 U.S.C. § 2000e *et seq.* (Title VII) violations (Counts Thirty-Nine through Forty-Five). Plaintiff seeks both back and front pay; punitive, liquidated, and compensatory damages; reinstatement; and attorney's fees and costs.

On June 16, 2017, Defendants filed the current motion to dismiss. D.E. 13-14. Plaintiff filed a brief in opposition to this motion, D.E. 19, to which Defendants replied. D.E. 20.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) governs motions to dismiss for "failure to state a claim upon which relief can be granted." For a complaint to survive dismissal under the rule, it must contain sufficient factual matter to state a claim that is plausible on its face. *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although the plausibility standard "does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted). As a result, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of [his] claims." *Id.* at 789.

In evaluating the sufficiency of a complaint, district courts must separate the factual and legal elements. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). Restatements of the elements of a claim are legal conclusions, and therefore, not entitled to a presumption of truth. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011). The Court, however, "must accept all of the complaint's well-pleaded facts as true." *Fowler*, 578 F.3d at 210. In deciding a motion to dismiss the Court may also consider any "document integral to or explicitly relied upon in the complaint." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quotation & emphasis omitted)). Even if plausibly pled, however, a complaint will not withstand a motion to dismiss if the facts alleged do not state "a legally cognizable cause of action." *Turner v. J.P. Morgan Chase & Co.*, No. 14-7148, 2015 WL 12826480, at *2 (D.N.J. Jan. 23, 2015).

## III.   **LEGAL ANALYSIS**

Defendants argue that Plaintiff's Amended Complaint should be dismissed on several grounds under Rule 12(b)(6).[6] First, Defendants argue that the doctrine of collateral estoppel bars all of Plaintiff's claims. Pl. Opp. at 17-23. Second, Defendants assert that Plaintiff has failed to sufficiently allege that Rooney and D.R. are state actors under Section 1983. *Id.* at 27-30. Third, Defendants argue that Plaintiff has failed to plausibly state a claim of religious discrimination under the New Jersey Law Against Discrimination, *id.* at 23-27, a claim of civil rights conspiracy, *id.* at 29-30, and claims for breach of contract and breach of duty of good faith and fair dealing, *id.* at 30-36. Fourth, and finally, Defendants assert that Toback and Leonard are entitled to qualified immunity. *Id.* at 36-40.

### A.  Collateral Estoppel

Defendants first argue that the doctrine of collateral estoppel bars Plaintiff's Amended Complaint. Defendants assert that collateral estoppel applies because the exact issues raised in the Amended Complaint were previously raised and litigated in an earlier proceeding. Def. Brf. at 17. Specifically, Defendants allege that the issue of whether the Wayne BOE had a valid, rather than religious discriminatory, reason to terminate Plaintiff was fully litigated before Arbitrator Joel Weisblatt in the tenure hearing. *Id.* at 19. Defendants state that during the tenure hearing, Plaintiff "alleged that the testimony of D.R. was fabricated in response to the suspension he received for the comment regarding Plaintiff's religious faith." *Id.* at 20. Finally, Defendants point out that the Superior Court of New Jersey upheld Arbitrator Weisblatt's decision. *Id.* at 22.

---

[6] In their motion to dismiss, Defendants originally argued that the *Younger* abstention doctrine barred Plaintiff's Amended Complaint. Pl. Opp. at 9-17. However, in their reply brief, Defendants admitted that there was no longer any pending state court matter in this case and, therefore, that *Younger* abstention did not apply. Pl. Rep. at 3.

Plaintiff responds that the doctrine of collateral estoppel is inapplicable here for several reasons. To begin, Plaintiff asserts that the parties to the current lawsuit differ from the parties at arbitration. Plaintiff further claims that the issues alleged in the Amended Complaint differ from the legal issues at arbitration and that he could not raise his current legal claims before the arbitrator. Pl. Opp. at 16-17. Plaintiff indicates that N.J.S.A. Section 18A:6-9 statutorily limited the arbitrator to only hearing and determining issues "under school laws." *Id.* at 17-18.

The Court agrees with Plaintiff that the doctrine of collateral estoppel does not apply here. Collateral estoppel bars a party from relitigating a legal issue when four elements are present: "(1) the identical issue was previously adjudicated; (2) the issue was actually litigated; (3) the previous determination was necessary to the decision; and (4) the party being precluded from relitigating the issue was fully represented in the prior action." *Raytech Corp. v. White*, 54 F.3d 187, 190 (3d Cir. 1995) (citing *United Industrial Workers v. Government of the Virgin Islands*, 987 F.2d 162, 169 (3d Cir. 1993)). The first three elements are not present here.

Plaintiff relies on *Galbraith v. Lenape Reg'l High Sch. Dist.*, 964 F. Supp. 889, 892 (D.N.J. 1997). Plaintiff's reliance is misplaced, however. *Galbraith* discussed the "arises under school laws" requirement in N.J.S.A. Section 18A:6-9 in the context of deciding whether New Jersey's entire controversy doctrine applied, not collateral estoppel. 964 F. Supp. at 895.

Nevertheless, the *Galbraith* court's subsequent discussion on collateral estoppel is applicable. The *Galbraith* court observed the following:

> [L]liability under Title VII and the NJLAD requires more than a finding that the Board violated Plaintiff's tenure rights. In order to prevail on these claims, a plaintiff must show that: (1) she is a member of a protected class; (2) she was qualified for the position which she sought; and (3) the employer continued to seek to fill the position after rejecting the plaintiff. . . . Moreover, the remedies available to the Plaintiff in her Title VII and NJLAD claims are more comprehensive than those already awarded by the Commissioner. In

addition to reinstatement and back pay, a successful plaintiff may
receive compensatory and punitive damages, and attorneys' fees,
under both Title VII and the NJLAD.

*Galbraith*, 964 F. Supp. at 897 (internal citations omitted). Thus, the *Galbraith* court recognized

that the legal elements and remedies present in the plaintiff's Title VII and NJLAD claims

differed from those at the tenure hearing. As a result, the court in *Galbraith* concluded that

collateral estoppel did not apply to bar these claims. The same is true here.

The *Galbraith* court did find that collateral estoppel barred the plaintiff's contract claim.

*Id.* at 896. However, the breach of contract issue in *Galbraith* differs significantly from

Plaintiff's breach of contract claim. In *Galbraith*, the tenure hearing centered on whether the

school district violated the plaintiff's tenure rights when it appointed a non-tenured supervisor to

the position of Supervisor of Humanities. *Id.* Thus, the very contract at issue was the plaintiff's

tenure agreement. Here, by comparison, Plaintiff claims that the contract breached was a May

2015 agreement with the Wayne School District that contained a confidentiality clause. Unlike

in *Galbraith*, the arbitrator here did not make factual or legal findings concerning the alleged

breach of the prior confidentiality provision.

**B. Section 1983 State Actors**

Defendants next argue that Plaintiff has failed to sufficiently allege that Rooney and D.R.

are state actors under Section 1983. Def. Brf. at 27. Defendants claim that Plaintiff has not

plausibly pled that D.R. and Rooney's actions have the requisite "close nexus" to qualify as state

action. *Id.* To that end, Defendants point to case law holding that a private party's filing of a

complaint or invocation of a state procedure does not establish that private individual as a state

actor for Section 1983 purposes. *Van Tassel v. Lawrence Cty. Domestic Relations Section*, 659

9

F. Supp. 2d 672, 699 (W.D.Pa. 2009), *aff'd sub nom. Van Tassel v. Lawrence Cty. Domestic Relations Sections*, 390 F. App'x 201 (3d Cir. 2010).

Plaintiff counters that the Amended Complaint sufficiently alleges that Leonard and Toback are state actors. The Amended Complaint states that "the state actors Leonard and Toback adopted the unlawful retaliatory allegation by Rooney and D.R. in place of their own judgment." Pl. Opp. at 33. Plaintiff claims that Leonard and Toback's substitution of their own judgment for that of D.R. and Rooney's suffices to create state action. In support of this claim, Plaintiff quotes several cases suggesting that state action may occur where a state actor substitutes his or her own judgment for that of a private party's. *See Cahill ex rel. L.C. v. Live Nation*, 512 F. App'x 227, 230 (3d Cir. 2013); *Mammaro v. Omega Lab., Inc.,* 2014 WL 4854602, at *2 (D.N.J. Sept. 30, 2014).

The Court finds that the Amended Complaint does not sufficiently allege that Rooney or D.R. are state actors under Section 1983. Courts may determine whether a private party qualifies as a state actor under various tests. *Cahill*, 512 F. App'x at 230. Here, both Plaintiff and Defendants rely on the joint action test. That test requires a court to engage in a two-prong inquiry to determine whether: "(1) the private entity has a 'prearranged plan' with the [state actors], and (2) under the plan, the [state actors] will 'substitute their [own] judgment' with that of the private entity's.'" *Id.* (citing *Cruz v. Donnelly*, 727 F.2d 79 (3d Cir.1984)). If both prongs are met, then the private actor's actions will be deemed state action. *See Cahill*, 512 F. App'x at 231 (finding that a contract for the Hanover Township Police Department to provide security for a corporation's live entertainment venue satisfied the first prong of a "prearranged plan," but finding that the second prong was not met because there was "no evidence" that the police "blindly obeyed" a directive to use force or issue citations "without any thought that this would

be an appropriate course of action"); *Cruz*, 727 F.2d at 79 (holding that police officers' decision to follow the order of a shopkeeper to strip search plaintiff failed the joint action test because "[n]owhere does [plaintiff] assert that the police would *not* strip search him as part of a routine shoplifting investigation, with or without [the shopkeeper's] 'order and command'") (emphasis in original).

Here, Plaintiff has not alleged sufficient facts to meet the two prongs of the joint action test. The Amended Complaint alleges that D.R. made a derogatory religious comment in class, which Plaintiff reported to Leonard. Leonard then suspended D.R. Later that day, Rooney called Leonard alleging that Plaintiff had also engaged in prior inappropriate behavior while teaching. The school investigated Rooney's allegations, which led to a tenure hearing where Plaintiff was terminated from his teaching position. Accepting all of these facts as true, they fail to show either that Defendants engaged in a prearranged plan or that Leonard and Toback substituted their judgment for that of D.R and Rooney's. Leonard and Toback did not accept Rooney's allegations at face value and decide to immediately fire Plaintiff. Instead, they investigated the claims and determined that the evidence sufficiently demonstrated impropriety by Plaintiff. Moreover, neither Toback nor Leonard actually fired Plaintiff; the decision was made by the neutral arbitrator after a full, multi-day hearing.

Plaintiff adds that Leonard's admission that he did not interview former students of Plaintiff shows that "Leonard readily wanted to, and did, adopt the Rooney allegations about the Plaintiff to the exclusion of all exculpatory facts." Pl. Opp. at 33. This a conclusory allegation and, as such, does not warrant a presumption of truth. Moreover, Plaintiff does not allege that those students had exculpatory information or that he was precluded from calling those students at the arbitration if Plaintiff believed that it would have helped his case. Thus, the Amended

11

Complaint fails to plausibly allege that Rooney or D.R. are state actors. Counts Four and Five are dismissed without prejudice.

### C. The New Jersey Law Against Discrimination

Defendants next argue that the Amended Complaint fails to state a claim for religious discrimination under the New Jersey Law Against Discrimination ("NJLAD"). Def. Brf. at 23. Specifically, Defendants allege that the Amended Complaint fails to state a *prima facie* case of religious discrimination. In support, Defendants assert that the Amended Complaint does not allege sufficient facts to show that Plaintiff is qualified for the position sought. *Id.* at 23-25. Defendants, instead, claim that the qualification issue "has already been determined" because the arbitrator found that Plaintiff was unqualified to teach. *Id.* at 25.[7]

Plaintiff responds that the Amended Complaint plausibly pleads that Plaintiff was sufficiently qualified for his teaching position. He points to the Amended Complaint's factual allegations that "he worked for the School District from 1997 to 2017 and that he obtained tenure." Pl. Opp. at 26. Further, because Arbitrator Weisblatt did not rule on Plaintiff's NJLAD claims, Plaintiff asserts that the arbitrator's findings are not relevant. *Id.* at 27. In the alternative, Plaintiff asserts that the Department of Labor determined that the Wayne School District failed to meet its burden of proving that Plaintiff engaged in misconduct. *Id.*

The New Jersey Supreme Court has ruled that the United States Supreme Court's test in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) is the starting point for analyzing a

---

[7] Defendants also argue that the Amended Complaint fails to plausibly plead a claim of hostile work environment under the NJLAD. Plaintiff, however, points out that the Amended Complaint does not state a claim of a hostile work environment under NJLAD. Pl. Opp.at 28, fn. 9. The Amended Complaint does plead claims of a hostile work environment under Section 1983 in Counts One through Five. Defendants do not challenge those counts. Thus, the Court does not address Defendants' hostile work environment arguments because the Amended Complaint does not assert any such cause of action under NJLAD.

claim under the NJLAD. *Bergen Commercial Bank v. Sisler*, 157 N.J. 188, 210 (1999). The

*McDonell Douglas* test is a three-stage process: (1) the plaintiff must present sufficient evidence

to establish a *prima facie* case of discrimination; (2) the defendant must then provide a legitimate

non-discriminatory reason for its decision; and (3) the plaintiff must then have an opportunity to

argue that defendants' stated reason was pretextual or discriminatory in its application. *Dixon v.*

*Rutgers, The State Univ. of New Jersey*, 110 N.J. 432, 442 (1988).

The first stage, where the plaintiff must make out a *prima facie* case of discrimination, "is

met when the plaintiff shows that 'it is more likely than not' that the employer's actions were

based on unlawful considerations." *Dixon*, 110 N.J. at 443 (quoting *Furnco Constr. Corp. v.*

*Waters*, 438 U.S. 567, 577 (1978)). To do so, a plaintiff must allege the following: (1) plaintiff

is a member of a protected class; (2) plaintiff was qualified for the rank or position sought; (3)

plaintiff was denied promotion, reappointment, or tenure; and (4) others with similar or lesser

qualifications achieved the rank or position. *Dixon*, 110 N.J. at 443 (citations omitted).

Defendants argue that Plaintiff has not sufficiently pled the element of qualification to

make out a *prima facie* case of discrimination in light of the arbitrator's decision. Yet,

Defendants' argument fails because it assumes the very fact that is at issue: the propriety of

bringing the tenure proceedings. At this stage, Plaintiff has plausibly pled that he was qualified

for his teaching position. The Amended Complaint states that Plaintiff worked for the Wayne

School District from 1997 to 2017, during which time he received tenure. Count Thirty-Three,

therefore, remains.[8]

---

[8] Plaintiff argues that Defendants only moved to dismiss the thirty-third claim of the Amended
Complaint, which is the underlying claim of religious discrimination pursuant to the NJLAD. Pl.
Opp. at 26, fn. 7. In the heading for Point III, Defendants merely state that they are moving to
dismiss a claim for religious discrimination under the NJLAD, N.J.S.A. 10:5-1 et seq. Def. Brf.
at 23. Defendants do not expressly argue that the other NJLAD counts should be dismissed nor

**D. Section 1985 Civil Rights Conspiracy**

Defendants next argue that Plaintiff has not plausibly pled a claim of civil conspiracy under Section 1985. Def. Brf. at 29-30. Defendants assert that the only factual allegation in the Amended Complaint that supports Plaintiff's civil conspiracy theory is Rooney's accusations about Plaintiff to Leonard. *Id.* at 30. In a footnote, Plaintiff counters that Defendants mistakenly seek dismissal of the civil conspiracy claims in a section of their brief addressing the Section 1983 liability of D.R. and Rooney, even though Plaintiff only alleges Section 1985 claims against Leonard and Toback. Pl. Opp. at 34. The Court agrees that Defendants could have more clearly asserted their position. However, Defendants' motion to dismiss clearly argues that Plaintiff failed to plausibly plead a civil conspiracy claim under Section 1985(3). Therefore, the Court will address that argument.

The Court finds that the Amended Complaint does not plausibly plead a claim of civil conspiracy under Section 1985(3). A plaintiff may bring a Section 1985(3) claim if he has been harmed by a "conspiracy formed 'for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws.'" *Farber v. City of Paterson*, 440 F.3d 131, 134 (3d Cir. 2006) (quoting 42 U.S.C. § 1985(3)). To allege a Section 1985(3) claim, a plaintiff must plausibly allege the following:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is injured in his person or property or deprived of any right or privilege of a citizen of the United States.

---

do they analyze why such dismissal is appropriate. Counts Thirteen through Eighteen and Twenty-Six through Thirty-Two, therefore, remain.

*Id.* (quoting *United Bhd. of Carpenters & Joiners v. Scott*, 463 U.S. 825, 828-29 (1983)).

Here, the factual allegations in the Amended Complaint fall far short of sufficiently alleging a Section 1985(3) claim. To properly allege the first element of a conspiracy, a plaintiff must show "(1) a combination of two or more persons; (2) a real agreement or confederation with a common design; (3) the existence of an unlawful purpose, or a lawful purpose to be achieved by unlawful means; and (4) special damages." *John Wiley & Sons, Inc. v. Rivadeneyra*, 179 F. Supp. 3d 407, 412 (D.N.J. 2016) (citing *Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C.*, 331 F.3d 406, 414 (3d Cir. 2003)). Plaintiff asserted his Section 1985(3) conspiracy claims against only Leonard and Toback. There is a dearth of factual allegations to adequately support a civil rights conspiracy. The Court cannot reasonably infer a conspiracy merely because Rooney complained to Leonard about Plaintiff after Leonard suspended D.R. Plaintiff admits that Leonard confronted D.R. and took immediate action after Plaintiff complained of D.R.'s inappropriate Jewish statement. Such immediate disciplinary action is inconsistent with any religious-based conspiracy by Leonard. Moreover, the Amended Complaint fails to indicate that when Rooney complaint to Leonard, Rooney made any religious reference to Plaintiff at all. Additionally, the Amended Complaint does not allege that Leonard accepted Rooney's allegations at face value; instead, Leonard instituted an investigation, as he was required to do pursuant to New Jersey law. Finally, as to Toback, the Amended Complaint does not plausibly allege that he joined any conspiracy. Therefore, Counts Six and Seven are dismissed without prejudice.

Further, "transgressions of s[ection] 1986 by definition depend on a preexisting violation of s[ection] 1985, if the claimant does not set forth a cause of action under the latter, its claim under the former necessarily must fail also." *Rogin v. Bensalem Twp.*, 616 F.2d 680, 696 (3d

Cir. 1980). Thus, the Amended Complaint's Section 1986 claims,[9] Counts Eight through Eleven, are also dismissed without prejudice.

### E. Breach of Contract and Breach of Duty of Good Faith and Fair Dealing

Defendants also argue that Plaintiff's Amended Complaint fails to plausibly plead either a cause of action for breach of contract claim or for breach of duty of good faith and fair dealing. Def. Brf. at 30-36. Both of these claims stem from the Defendants' alleged improper disclosure of the terms of the May 21, 2015 Settlement Agreement ("Agreement") entered into by the Wayne BOE and Plaintiff. Plaintiff believes that Defendants improperly disclosed the Agreement's terms to (a) Arbitrator Weisblatt, (b) the New Jersey Department of Labor, (c) the EEOC, and (d) the Court via the electronic filing system ("ECF").

According to Defendants' supplemental statement of facts, on February 8, 2015, the Wayne School District received notice that Plaintiff had engaged in a verbal and physical altercation with a number of students. Def. Brf. at 3. Thereafter, the District investigated that matter and determined that Plaintiff had violated a regulation and policy concerning inappropriate staff conduct. *Id.* As a result, Plaintiff and the District entered into the May 21, 2015 Settlement Agreement.[10] *Id.* Thus, the Agreement stems from a prior incident where Plaintiff was found to have behaved inappropriately towards students. While the Court is aware

---

[9] Section 1986 "is a companion to s[ection] 1985(3) and provides the claimant with a cause of action against any person who, knowing that a violation of s[ection] 1985 is about to be committed and possessing power to prevent its occurrence, fails to take action to frustrate its execution." *Rogin v. Bensalem Twp.*, 616 F.2d 680, 696 (3d Cir. 1980)

[10] The Agreement contained the following terms: Plaintiff was placed on unpaid leave from June through September 2015, transferred to another school building in the District, and forfeited thirty accumulated sick days. In addition, the District reserved the right to bring tenure charges against Plaintiff in the 2015-2016 school year or thereafter if Plaintiff engaged in further conduct that the Wayne BOE believed was inappropriate. Def. Brf. at 3-4.

of the foregoing factual allegations, it does not consider them in deciding the current motion. Such factual allegations as to the backdrop of the Agreement are not appropriate at the motion to dismiss stage.

Defendants argue that the terms of the Agreement specifically reserved to the Wayne BOE the right to bring tenure charges against Plaintiff in the future. They assert that by signing the Agreement, Plaintiff inherently agreed to the Agreement being introduced at any subsequent tenure hearing. *Id.* at 32. Defendants add that the Wayne BOE is a public entity and that, as such, any settlement agreement it enters into becomes a public governmental record.[11] Defendants continue that the doctrine of collateral estoppel bars Plaintiff from asserting a claim for damages, a required element of a breach contract claim. *Id.* at 33. Defendants next argue that since the New Jersey Department of Labor approved Plaintiff for unemployment benefits, even after reading the Agreement, Plaintiff suffered no damage from the disclosure. *Id.* at 34. Finally, Defendants argue that Plaintiff's disclosures of the Agreement's terms on November 22, 2016, when he filed an Order to Show Cause and Complaint in the Superior Court of New Jersey, made the terms public. *Id.* at 35.

Plaintiff responds that he did not inherently consent to the Agreement's disclosure at any future tenure hearing. Pl. Opp. at 28-29. Plaintiff also contends that even if the Agreement is a public governmental record, Defendants would have still been subject to the New Jersey Open Public Record Act ("OPRA") so that Defendants would have to first demonstrate that they produced an OPRA request. *Id.* at 29-30. Plaintiff further argues that collateral estoppel does

---

[11] To support this assertion, Defendants cite to *Burnett v. Cty. of Gloucester*, 415 N.J. Super. 506, 508-09 (App. Div. 2010) and *Asbury Park Press v. Ocean Cty. Prosecutor's Office*, 374 N.J. Super. 312 (Law. Div. 2004).

not apply. *Id.* at 30. In addition, Plaintiff argues that Defendants' disclosure of the Agreement

to the New Jersey Department of Labor did cause him damage because it delayed his receipt of

unemployment benefits. *Id.* Plaintiff concludes that any disclosure on his part of the Agreement

requires the Court to interpret the Agreement and is, therefore, not ripe for dismissal at this stage.

To establish a breach of contract under New Jersey law, a plaintiff must demonstrate that

there is (1) a valid contract; (2) plaintiff performed under the contract; (3) defendant's breach of

the contract; and (4) resulting damages. *Lacroce v. M. Fortuna Roofing, Inc.*, 2017 WL 431768,

at *5 (D.N.J. Jan. 31, 2017); *see also Murphy v. Implicito*, 392 N.J. Super. 245, 265 (App. Div.

2007). Further, a covenant of good faith and fair dealing is implied in every contract pursuant to

New Jersey law. *Wilson v. Amerada Hess Corp.*, 168 N.J. 236, 244 (2001). Under such a

covenant, "neither party shall do anything which will have the effect of destroying or injuring the

right of the other party to receive the fruits of the contract." *Wade v. Kessler Inst.*, 172 N.J. 327,

340 (2002) (internal quotation marks omitted) (quoting *Bak-A-Lum Corp. of Am. v. Alcoa Bldg.*

*Prod., Inc.*, 69 N.J. 123, 129 (1976)).

Plaintiff's Amended Complaint has alleged plausible breach of contract and breach of

good faith and fair dealing claims as to Defendants' disclosure of the Agreement's terms to

Arbitrator Weisblatt and the New Jersey Department of Labor. The parties agree that the

Agreement is a valid contract and that it contained a confidentiality clause limiting any

disclosure of the Agreement's terms and conditions. Def. Brf. at 31. Therefore, at this stage, it

appears plausible that Defendants breached the Agreement's terms, to Plaintiff's detriment, when

they disclosed the Agreement's terms to Arbitrator Weisblatt and the New Jersey Department of

Labor. Moreover, as to damages, Plaintiff claims that disclosure of the Agreement's terms to the

New Jersey Department of Labor resulted in a delay of his unemployment benefits. Similarly,

Defendants' alleged failure to keep the Agreement confidential could reasonably be said to have damaged Plaintiff's right to have the Agreement terms be kept confidential. The Court cannot resolve Defendants' arguments as to implied assent and the public nature of the document at the motion to dismiss stage. Therefore, the Amended Complaint plausibly pleads Counts Twenty through Twenty-Three.

However, the Amended Complaint fails to plausibly plead breach of contract and breach of good faith and fair dealing claims as to Defendants' disclosure of the Agreement's terms to the EEOC and to the Court. Plaintiff himself published a number of documents referencing the Agreement's terms on November 21, 2016, when he filed an Order to Show Cause and Complaint in the Superior Court of New Jersey. Despite Plaintiff's claim, the Court does not need to interpret the Agreement to determine whether Plaintiff actually disclosed its terms; the question is one of Plaintiff's action, not one of contract interpretation. Thus, since Plaintiff made the Agreement's terms public on November 21, 2016, he cannot now plausibly claim that Defendants breached the Agreement when they later disclosed the terms to the EEOC and ECF. *See Red Roof Franchising, LLC v. AA Hospitality Northshore, LLC*, 877 F. Supp. 2d 140, 150 (D.N.J. 2012) (applying New Jersey law to find that "a material breach of contract of one party can excuse performance by the other party"); *Nolan by Nolan v. Lee Ho*, 120 N.J. 465, 472 (1990) (holding that "[a] settlement agreement between parties to a lawsuit is a contract . . . [w]hen there is a breach of a material term of an agreement, the non-breaching party is relieved of its obligations under the agreement."). Therefore, Counts Thirty-Five through Thirty-Eight are dismissed without prejudice.[12]

---

[12] In the Court's original Opinion (D.E. 21) the Court listed the numbers of the Counts to be dismissed in error as Twenty-Five through Twenty-Eight. The correct Counts to be dismissed without prejudice are Thirty-Five through Thirty-Eight.

## F. Section 1983 Qualified Immunity

Finally, Defendants argue that Leonard and Toback are entitled to a dismissal of all claims asserted against them because of the doctrine of qualified immunity. Defendants assert that the Amended Complaint fails to allege that either Leonard or Toback committed a constitutional violation when they suspended, investigated, and ultimately terminated Plaintiff. Defendants add that the Arbitrator ordered Plaintiff's firing, not Leonard or Toback. Defendants also claim that, pursuant to the New Jersey Anti-Bullying Bill of Rights Act ("Anti-Bullying Act"), N.J.S.A. 18A:37-13.2, the Wayne BOE had adopted a required policy of prohibiting harassment, intimidation, or bullying on school property. Def. Brf. at 38. Defendants state that pursuant to that Act, Leonard was required to investigate Rooney's allegations against Plaintiff within one day of hearing the allegations and then report the findings of that investigation to the Wayne BOE. *Id.* Defendants argue that if Leonard and Toback had not conducted a prompt investigation of Rooney's allegations, they would have been in violation of the Act and could have faced possible sanctions. *Id.* at 39.

Plaintiff, however, argues that the Amended Complaint sufficiently alleges that Leonard and Toback violated several clearly defined constitutional rights. Pl. Opp. at 34. Plaintiff further argues that the Anti-Bullying Act did not require Leonard or Toback to start an investigation. For support, Plaintiff cites to the Act's language defining harassment, intimidation, or bullying as an act "that *substantially* disrupts or interferes with the orderly operation of the school or the rights of other students . . . ." *Id.* at 36 (emphasis in original) (quoting N.J.S.A. Section 18A:37-14). Plaintiff claims that this language gave Leonard and Toback the ability to assess the biased nature of Rooney's allegations and find that, since there was no substantial disruption, no investigation was necessary. *Id.* at 37.

The Court recognizes that both the Third Circuit and United States Supreme Court have found that questions of immunity should be resolved at the earliest possible litigation stage. *Miller v. Clinton Cty.*, 544 F.3d 542, 547 (3d Cir. 2008). At this stage, however, the Court cannot conclude that Leonard and Toback are entitled to such immunity. 42 U.S.C. § 1983, in relevant part, provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

Section 1983 does not provide substantive rights. Rather, it provides a vehicle for vindicating violations of other federal rights. *Graham v. Connor*, 490 U.S. 386, 393-94 (1989). In order to state a valid claim for relief under Section 1983, a plaintiff must first allege a violation of a right secured by the Constitution or laws of the United States and, second, a plaintiff must contend that the violation was caused or committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

When a state official's actions give rise to a Section 1983 claim, qualified immunity can shield the officer from liability. *Wright v. City of Philadelphia*, 409 F.3d 595, 599 (3d Cir. 2005). "The defendant has the burden of establishing qualified immunity." *Ihlenfeld v. Darby Borough Police Dep't*, No. 16-01990, 2017 WL 132169, at *6 (E.D.Pa. Jan. 13, 2017). The United State Supreme Court has found that the issue of qualified immunity turns on two questions: (1) whether plaintiff's alleged facts make out a violation of a constitutional right; and (2) if so, whether the right at issue was clearly established at the time of defendant's alleged violation. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). Thus, qualified immunity "can be

overcome when state officials violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Id.* (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 806 (1982)). As to whether a right is clearly established, the Supreme Court has ruled that the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Saucier v. Katz*, 533 U.S. 194, 202 (2001).

At this stage, Plaintiff has asserted a violation of clearly established constitutional rights. Defendants' arguments concerning Leonard and Toback's obligations to investigate pursuant to the New Jersey Anti-Bullying statute are more akin to an affirmative defense rather than a curtailment of constitutional rights. However, assuming that Defendants are correct and the state statute goes directly to whether a constitutional right is clearly established (or even a right at all), additional legal analysis is required. First, the interplay between state statutory obligations and constitutional rights must be reviewed (and Defendants, who bring the motion, have not done so). Second, a construction of the state statute, including the "substantially" requirement is also necessary. Moreover, greater factual development of the record, beyond the Amended Complaint's allegations, is required. One example is determining the substance of Rooney's allegations against Plaintiff. For these reasons, the Court is unable to conclude that qualified immunity is applicable at this stage.

## IV.   **CONCLUSION**

For the reasons set forth above, Defendants' motion to dismiss (D.E. 14) is **GRANTED in part** and **DENIED in part**. The Court grants Defendants' motion to dismiss the Amended Complaint's Section 1983 claims against Rooney and D.R. (Counts Four and Five), Section 1985 claims against Toback and Leonard (Counts Six and Seven), Section 1986 claims against Toback, Leonard, Rooney, and D.R. (Counts Eight through Eleven), breach of contract as to the

Defendants' disclosure to the EEOC and ECF (Counts Thirty-Five and Thirty-Seven), and breach of duty of good faith and fair dealing as to the Defendants' disclosure to the EEOC and ECF (Counts Thirty-Six and Thirty-Eight). Counts Four through Eleven and Counts Thirty-Five through Thirty-Eight are dismissed without prejudice. The Court otherwise denies Defendants' motion to dismiss. Plaintiff has thirty (30) days to file a Second Amended Complaint, if he so chooses, consistent with this Opinion. If Plaintiff does not do so, Counts Four through Eleven and Thirty-Five through Thirty-Eight will be dismissed with prejudice. An appropriate Order accompanies this Opinion.

Dated: March 13, 2018

John Michael Vazquez, U.S.D.J.